UNITED STATES of America,
Plaintiff–Appellee,

v.

Thomas Alberto ROMERO–AVILA,
Defendant–Appellant.

No. 99–50289.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 10, 2000

Filed April 26, 2000

Gary P. Burcham (argued) and Michelle D. Anderson, Federal Defenders of San Diego, Inc., San Diego, California, for the defendant-appellant.

Daniel S. Drosman, Assistant United States Attorney, San Diego, California, for the plaintiff-appellee.

Before: BOOCHEVER, HAWKINS, and THOMAS, Circuit Judges.

MICHAEL DALY HAWKINS, Circuit Judge:

Thomas Alberto Romero–Avila ("Romero–Avila") appeals his conviction for possessing and importing marijuana and falsely claiming U.S. citizenship. Romero–Avila alleges that there was a fatal variance between the indictment and the evidence at trial; that the district court committed plain error by allowing the government to point to his poverty as a possible motive; that the district court erred by failing to instruct the jury on his theory of the defense; and that the district court erred by failing to inquire into a possible conflict on the jury. For the reasons set forth below, we affirm Romero–Avila's conviction.

## I.  BACKGROUND

On August 19, 1998, Romero–Avila attempted to enter the United States through the Calexico Port of Entry driving a 1986 Nissan pick-up truck. According to the testimony of Jesse Ceron, an inspector for the Immigration and Naturalization Service, Romero–Avila stated upon questioning that he was a United States citizen. He also stated that he lived in Ontario, California, and that he had driven to Mexico to find a "unique gift" for his daughter, though he was unable to describe the gift. Ceron thought Romero–Avila appeared nervous (his voice was shaking and he was looking away), so he directed him to a secondary inspection station.

At secondary inspection, Romero–Avila was met by U.S. Customs Inspector Salvador Nieblas. Nieblas testified that he asked Romero–Avila whether he was a U.S. citizen and that Romero–Avila replied yes. Romero–Avila also told Nieblas that he had been in Mexico all day looking for a "unique gift" for his daughter. Nieblas asked Romero–Avila to step out of the car and noticed that he began pacing nervously. Nieblas then inspected the car. He noticed two pine-scented air fresheners on the gear shift, which he testified made him suspicious because air fresheners are often used to mask the smell of marijuana. He also noticed that as he inspected the dashboard, Romero–Avila became increasingly nervous. When Nieblas popped off the cover of the dashboard, he found 35 packages containing 39.7 pounds of marijuana.

Romero–Avila was arrested and questioned by U.S. Senior Special Customs Agent Manuel Rascon. During questioning, Romero–Avila stated that he had been born in Mexico but was a naturalized citizen of the United States. Rascon checked this by computer and discovered that Romero–Avila was not a U.S. citizen, but was a resident alien. He also checked the Department of Motor Vehicles database and learned that Romero–Avila owned the truck he had driven to the border. Romero–Avila was charged in an indictment with importation of marijuana, in violation of 21 U.S.C. §§ 952 and 960; possession of marijuana with intent to distribute, in violation of 21 U.S.C. § 841(a)(1); and false

**1020**

claim of United States citizenship, in violation of 18 U.S.C. § 911.

On the morning of trial, the prosecutor informed the district judge that he had discovered an error in the indictment the night before. Count 3 of the indictment stated that Romero–Avila had falsely and willfully represented "to United States Immigration and Naturalization Service Inspector II C. Perez, a person having good reason to inquire into the nationality status of the defendant, that he was a citizen of the United States." The prosecutor explained that the reference to C. Perez was a typographical error and that Romero–Avila had in fact lied about his citizenship to several other officers, not to C. Perez. The prosecutor argued that the name of the officer was immaterial and that the government was not required to include any name in the indictment. He also asked the judge not to give the indictment to the jurors because it would likely confuse them.

Counsel for Romero–Avila argued that the name was material. He pointed out that under Ninth Circuit case law, a defendant cannot be convicted of violating section 911 unless the misrepresentation is made to someone with good reason to inquire about the defendant's citizenship. As a result, he argued, the person to whom Romero–Avila allegedly lied about his citizenship must be specifically named in the indictment.

The district judge rejected this argument. Although she agreed with defense counsel that section 911 requires that the misrepresentation be made to someone with good reason to inquire, she ruled that the person's name was immaterial and need not be included in the indictment.

At the close of the prosecution's case, counsel for Romero–Avila moved for a judgment of acquittal on count 3, arguing that the government had failed to "introduce any evidence demonstrating that [Romero–Avila] made a false claim of citi-

zenship to I.N.S. Inspector II C. Perez." The judge denied the motion. She repeated her earlier finding that "the identification of the agent as to Count 3 is not material." She then said, "It is true that it's not C. Perez. That's an error. But I find it's not a fatal variance since, clearly, there was an open discovery in this case. Everybody knew the circumstances, date, time, place, and so on."

Romero–Avila was convicted on all three counts and sentenced to twelve months custody on each count, to run concurrently, and to three years of supervised release on each count, also to run concurrently. His judgment of conviction was filed on March 25, 1999, and he filed this timely appeal on March 29, 1999.

## II. DISCUSSION

### A. Variance Claim

■ Romero–Avila argues that there was a fatal variance between the indictment and the evidence introduced at trial and that as a result there was insufficient evidence to convict him of the crime charged. In reviewing this claim, we must ask "whether, when the evidence is viewed in the light most favorable to the government, a reasonable jury could find the defendant[ ] guilty beyond a reasonable doubt of each essential element of the crime charged." *United States v. Universal Trade and Indus., Inc.*, 695 F.2d 1151, 1153 (9th Cir.1983).

■ Section 911 of Title 18 has three identifiable elements. First, a defendant must falsely claim to be a U.S. citizen. Second, the misrepresentation must be willful. Third, the misrepresentation must be made to someone with good reason to inquire into the defendant's citizenship. The first two elements come from the language of the statute itself.[1] The third element derives from our case law. *See*

1. Section 911 provides: "Whoever falsely and willfully represents himself to be a citizen of the United States shall be fined under this title or imprisoned for not more than three years, or both." 18 U.S.C. § 911.

*Smiley v. United States,* 181 F.2d 505, 507–08 (9th Cir.1950).

Romero–Avila does not dispute that there was sufficient evidence to prove that he falsely and willfully misrepresented his citizenship to three border officers. Nor does he dispute that there was sufficient evidence to prove that these officials had good reason to inquire into his citizenship. He argues only that there was insufficient evidence to prove that the person to whom he lied about his citizenship was C. Perez and that this was a material element of the crime. To support this argument, he points to our decision in *Smiley. See* 181 F.2d at 507–08. He contends that because *Smiley* imposes a requirement that the misrepresentation be made to someone with good reason to inquire, the exact person to whom the statement was made is an element of the charged crime.

We disagree. Our decision in *Smiley* did not make exact identity an element of the crime. It only made an element of the crime that the statement be made to someone with good reason to inquire. In this case, the government presented evidence that Romero–Avila made the statement to three border guards, each of whom had good reason to inquire into the citizenship of the defendant. Therefore, there was sufficient evidence to prove this element of the crime.

We rejected a similar variance claim in *United States v. Von Stoll,* 726 F.2d 584 (9th Cir.1984). In that case, the indictment charged the defendant with transporting in interstate commerce $10,000 taken by fraud from Ron McCallum, while the evidence showed that the defendant took the money from McCallum's business partner. We held that even if there was a variance between the indictment and the evidence, it did not affect the defendant's substantial rights because the "identity of the defrauded person is irrelevant to a conviction under 18 U.S.C. § 2314." *Id.* at 587. Likewise, in *United States v. Momeni,* 991 F.2d 493 (9th Cir.1993), we rejected a variance claim where the indictment charged the defendant with fraudulent use of a credit card at one hotel, while the evidence showed that the card was used fraudulently at several other hotels as well. The defendant argued that the variance was fatal because his use of the credit card at the first hotel did not meet the statutory minimum of $1,000, and it was only by producing evidence of the credit card's use at other hotels that the government was able to meet this requirement. We disagreed, holding that the variance "did not affect Momeni's substantial rights because the place where the credit card charges were made is irrelevant to conviction under 18 U.S.C. § 1029(a)(2), and the record shows Momeni had notice the government would offer evidence of the charges at other hotels and that he did not object to its introduction at trial." *Id.* at 495.

The same analysis applies here. The exact identity of the border official to whom Romero–Avila lied is not an element of the offense under 18 U.S.C. § 911. In addition, Romero–Avila had notice that the prosecution would offer evidence of his statements to other officers. Finally, although Romero–Avila challenged the sufficiency of the evidence at trial, he never objected to the testimony of the other border officers. Therefore, his fatal variance claim must fail.

**B.   *Poverty Evidence***

■   During closing argument, the prosecution made the following statement about Romero–Avila: "He was unemployed, as you heard. He had no position. And he was hoping to make some money. Now, of course, that's not an element of the offense, not something the Government has to prove, but that's the obvious motive behind it." Romero–Avila did not object to this statement at trial, but he challenges it on appeal. Specifically, he argues that the prosecution improperly pointed to evidence of his poverty to suggest a motive for the crime.

■   When a defendant raises an issue on appeal not raised before the district

court, this court may review only for plain error. *See* Fed.R.Crim.P. 52(b); *United States v. Vences*, 169 F.3d 611, 613 (9th Cir.1999). "Plain error is found only where there is (1) error, (2) that was clear or obvious, (3) that affected substantial rights, and (4) that seriously affected the fairness, integrity, or public reputation of the judicial proceedings." *Id.* (quotations omitted). "In applying the plain error standard we consider all circumstances at trial including the strength of the evidence against the defendant." *United States v. Campbell*, 42 F.3d 1199, 1204 (9th Cir. 1994) (quotations omitted).

■ The government conceded at oral argument that the prosecutor's statement was error. In two recent cases, we held that "evidence of poverty or poor financial condition is inadmissible to prove motive where it is offered to show 'the mere fact that the defendant is poor.'" *United States v. Bensimon*, 172 F.3d 1121, 1129 (9th Cir.1999) (quoting *United States v. Jackson*, 882 F.2d 1444, 1449 (9th Cir. 1989)); *see also United States v. Mitchell*, 172 F.3d 1104, 1108–09 (9th Cir.1999). "To be admissible ... poverty evidence must be accompanied by something more, such as an 'unexplained, abrupt change in circumstances.'" *Bensimon*, 172 F.3d at 1129 (quoting *Mitchell*, 172 F.3d at 1108–09).

The government argues, however, that the error was not clear or obvious. It notes that *Bensimon* and *Mitchell* were decided more than two months after Romero–Avila's trial. And it points to our statement in *United States v. Turman*, 122 F.3d 1167, 1170 (9th Cir.1997), that an error is not clear or obvious "[w]hen the state of the law is unclear at trial and only becomes clear as a result of later authority...."

We find the government's argument unpersuasive. Although *Bensimon* and *Mitchell* were decided after Romero–Avila's trial, we reached the same conclusion more than a decade ago in *Jackson*. In that case, we approved the use of poverty evidence when related to an "unexplained and abrupt change" in the defendant's financial status, but stated that "poverty alone does not indicate a motive to commit, or the commission of, a crime." *Jackson*, 882 F.2d at 1450. We also cited with approval decisions from the Sixth and D.C. Circuits barring the use of general poverty evidence to suggest motive. *See id.* at 1449. And we noted that "those courts admitting evidence of financial motive have been confronted with more than the mere fact that the defendant is poor." *Id.*

■ Both *Bensimon* and *Mitchell* cited *Jackson* for the conclusion they reached. In addition, the court in *Mitchell* took note of the "*traditional* view that evidence of poverty is not admissible to show motive, because it is of slight probative value and would be unfairly prejudicial to poor people charged with crimes." *Mitchell*, 172 F.3d at 1108 (emphasis added). Thus, it seems apparent that the law on poverty evidence was clearly established at the time of Romero–Avila's trial and that it was an obvious error for the district court to allow the prosecution's statement.[2]

■ Nonetheless, we cannot reverse the conviction because Romero–Avila has not demonstrated that this clear and obvious error affected his substantial rights. To meet this test, a defendant must show that the error "affected the outcome of the district court proceedings." *United States v. Olano*, 507 U.S. 725, 734, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). Here, Romero–Avila argues that the prosecution's statement shifted the jury's attention away

2. We also reject the government's assertion that Romero–Avila is barred from challenging the prosecution's statement because the evidence of his unemployment came out during defense counsel's cross-examination of a government witness. It is one thing for the jury to hear incidental testimony that a defendant is unemployed. It is quite another for a prosecutor to tell the jury, in effect, that a defendant is guilty because he is poor. We pointed out this distinction between witness testimony and the prosecution's use of that testimony in *United States v. Whitehead*, 200 F.3d 634, 639 (9th Cir.2000).

from the relevant evidence and invited it to convict him because he is poor. However, the prosecution presented strong independent evidence of Romero–Avila's guilt. Two officers testified that he appeared nervous, especially when the dashboard of the truck was inspected. Romero–Avila lied about his citizenship when, as a resident alien, he had no reason to. And although he told officers that he had traveled three hours to Mexico to find a "unique gift" for his daughter, he was unable to describe the gift he was seeking. Given this evidence, and given that Romero–Avila bears the burden of persuasion on the issue of prejudice, *see Olano,* 507 U.S. at 734, 113 S.Ct. 1770, we cannot conclude that the error affected the outcome of the proceedings.

C. *Proposed Jury Instruction*

During trial, Romero–Avila filed proposed jury instructions that included a "theory of the defense" instruction. This proposed instruction read as follows:

Mr. Romero's theory of the case is that the marijuana was placed inside his car without his knowledge prior to him crossing the border on August 19, 1998. Because he was unaware of the marijuana's presence, he is not guilty.

Mr. Romero does not have to prove his innocence nor does he bear the burden of having to prove any fact in this case. If the prosecution fails to prove beyond a reasonable doubt that Mr. Romero knew that the marijuana was hidden in the car, you must return a not guilty verdict.

The district judge rejected the instruction, finding that the defendant's theory of the case was adequately covered by another instruction. That instruction stated that "a person may not be convicted of illegal possession of marijuana unless he knows a prohibited drug is present and is capable of exerting dominion and control over it. Mere proximity to the prohibited drug alone is insufficient to establish possession." Romero–Avila challenges the district judge's ruling.

"A defendant is entitled to have the judge instruct the jury on his theory of the defense, provided that it is supported by law and has some foundation in the evidence." *United States v. Mason,* 902 F.2d 1434, 1438 (9th Cir.1990). "A failure to give such instruction is reversible error; but it is not reversible error to reject a defendant's proposed instruction on his theory of the case if other instructions adequately cover the defense theory." *Id.* We "review de novo the question of whether the district court's instructions adequately cover the defense theory." *Id.*

Romero–Avila's proposed instruction consisted of three distinct points: (1) he could not be convicted unless he knew about the marijuana; (2) he was not required to prove any facts in the case; and (3) the government was required to prove his knowledge beyond a reasonable doubt. Each of these points was adequately covered by the judge in her charge to the jury. The first point was covered by the "mere proximity" instruction. The second point was covered when the judge told the jury that "the defendant is presumed to be innocent and does not have to testify or present any evidence to prove innocence." And the third point was covered when the judge explained that the "government has the burden of proving every element of the charges beyond a reasonable doubt." In addition to these instructions, the judge also told the jury that the prosecution was required to prove knowledge and that "an act is done knowingly if the defendant is aware of the act and does not act through ignorance, mistake, or accident."

It is true that the judge did not use Romero–Avila's precise words in giving these instructions. But "[a] defendant is not entitled to any particular form of instruction." *See United States v. Lopez–Alvarez,* 970 F.2d 583, 597 (9th Cir.1992). Accordingly, we reject Romero–Avila's challenge to the jury instructions.

### D. *Juror Note*

During jury deliberations, the jury foreperson sent the judge a note that read: "If we have one juror that is not following the instructions given, can we ask that person be replaced with an alternate?" The judge conferred with the attorneys for both sides and then sent the following response: "Are there any instructions that we can give you that will help at this point?" The jury did not respond to this question, but a few minutes later indicated that it had reached a verdict. Before the jury was brought out, defense counsel requested that the judge inquire further into the previous note from the jury. Counsel argued that the judge should either question the person referred to in the note or ask the jury foreperson about the matter. The judge declined, stating that it might be improper to take either step given that the jury had reached a verdict. She also stated that she would poll the jury to make sure all jurors agreed with the verdict. On appeal, Romero–Avila challenges the district judge's ruling.

We review a district judge's response to a question from the jury for abuse of discretion. *See United States v. Warren*, 984 F.2d 325, 329 (9th Cir.1993). Under the abuse of discretion standard, we cannot reverse absent a definite and firm conviction that the court below committed a clear error in judgment in the conclusion it reached upon the weighing of the relevant factors. *See Valley Eng'rs, Inc. v. Electric Eng'g Co.*, 158 F.3d 1051, 1057 (9th Cir.1998).

In *United States v. Hanley*, 190 F.3d 1017, 1030 (9th Cir.1999), the defendant received a note from one juror reporting that another juror had made comments throughout the trial, such as "good" and "leave him alone," in response to the questioning of witnesses. On the basis of that note, the defendant moved for dismissal of the second juror. The district court denied the motion, "reasoning that the alleged comments were too vague to draw a conclusion that [the juror] was biased."

*Id.* On appeal, the defendant argued that the court erred by refusing to dismiss the juror and by ruling on the motion without holding an evidentiary hearing. We rejected the challenge, stating that "[a]n evidentiary hearing is not mandated every time there is an allegation of jury misconduct or bias. Rather, in determining whether a hearing must be held, the court must consider the content of the allegations, the seriousness of the alleged misconduct or bias, and the credibility of the source." *Id.* at 1031 (quotations omitted). We then held that the district court had followed the proper course: "It considered the content and seriousness of the alleged statements and properly determined that such vague statements did not expose Defendants to unfair prejudice. In the circumstances, the district court's refusal to hold an evidentiary hearing was not an abuse of discretion." *Id.*

In this case, the district judge also followed a proper course. Upon receiving the first note, the judge conferred with the two attorneys and sent the jury a response. Then, when the jury announced that it had reached a verdict a few minutes later, the judge declined to inquire into the matter further. The judge reasoned that the conflict had been cleared up, and this assumption seems reasonable: None of the jurors expressed disagreement with the verdict when polled, and Romero–Avila has not presented any evidence from jurors that they were coerced into finding him guilty. Accordingly, we conclude that the district judge did not abuse her discretion.

AFFIRMED.