UNITED STATES of America,
Plaintiff,

v.

W.R. GRACE, Alan R. Stringer, Henry A. Eschenbach, Jack W. Wolter, William J. McCaig, Robert J. Bettacchi, O. Mario Favorito, Robert C. Walsh, Defendants.

No. CR 05–07–M–DWM.

United States District Court,
D. Montana,
Missoula Division.

Aug. 27, 2006.

Angelo J. Calfo, Harold Malkin, Michelle K. Peterson, Yarmuth Wilsdon Calfo, Se-attle, WA, Michael F. Bailey, Bailey & Antenor, William Adam Duerk, Michael J. Milodragovich, Milodragovich Dale Stein-brenner & Binney, Missoula, MT, David S. Krakoff, Gary A. Winters, James T. Par-kinson, Mark Holscher, Mayer Brown Rowe Maw LLP, Washington, DC, Ronald F. Waterman, Gough Shanahan Johnson & Waterman, Palmer A. Hoovestal, Hooves-tal Law Firm, Helena, MT, Jeremy Malt-by, O'Melveny & Myers, Los Angeles, CA, Elizabeth Van Doren Gray, Sowell Gray Stepp & Lafitte, Columbia, SC, William A. Coates, Roe Cassidy Coates & Price, Greenville, SC, Stephen R. Spivack, Brad-ley Arant Rose & White, Washington, D.C., for Defendants.

## ORDER

MOLLOY, Chief Judge.

### I. Introduction[1]

Before the Court is Defendants' joint motion in limine to exclude evidence of or derived from indoor asbestos releases. Defendants maintain that 42 U.S.C. § 7413(c)(5)(A) limits criminal liability to releases made into the "ambient air," that "ambient air" excludes indoor air, and thus, that evidence of or derived from in-door releases is irrelevant to the Clean Air Act counts of the indictment under Federal Rule of Evidence 402. Defen-dants also contend that even if relevant, such evidence is inadmissible under Fed-eral Rule of Evidence 403. The United States opposes the motion, arguing that such evidence is relevant to Count I of the Superseding Indictment, and that the dis-puted "indoor" evidence is of or derived from "ambient air" releases, and thus rele-vant to the application of § 7413(c)(5)(A).

---

1. The facts of this case are well known to the Court and the parties and will not be recited here except where necessary. *See U.S. v.*

*W.R. Grace,* 233 F.R.D. 586, 587–88 (D.Mont. 2005).

## II. Analysis

### A. Definition of "ambient air" for the purposes of § 7413

42 U.S.C. § 7413(c)(5)(A) is the "knowing endangerment" provision of the Clean Air Act. It provides for criminal penalties for the knowing release of certain hazardous pollutants "into the ambient air." [2] The term "ambient" is not defined in the Act. Defendants claim that canons of statutory construction and case law demand that "ambient air" be defined so as to exclude indoor air.

█ Defendants assert that what they designate " 'the ambient air quality' provisions" of the Act, i.e., §§ 7407–7410, clearly demonstrate that "ambient air" "means the general outdoor atmosphere." Defs' Br. at p. 6. Section 7407 establishes "air quality control regions" for the purpose of achieving the "national primary and secondary ambient air quality standards" the process for the promulgation of which is set out in §§ 7408–7410. Section 7409 is entitled "National primary and secondary ambient air quality standards." Section 7410 is entitled "State implementation plans for national primary and secondary ambient air quality standards." Defendants maintain that the use of "ambient air" in the description of these air quality standards "would make no sense applied to indoor air." Defs' Br. at p. 6. This understanding of the statutory context is bolstered by an examination of the Code of Federal Regulations. EPA regulations promulgated in 1971 following the passage of the Clean Air Act of 1970 (42 U.S.C. §§ 4701 et seq.) explicitly define "ambient air" as "that portion of the atmosphere, exterior to buildings, to which the general public has access." 40 C.F.R. § 50.1(e).

The Defendants' claim is well taken that §§ 7407–7410 establish the statutory context of the phrase "ambient air" and that since it is "a canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme," it follows that "ambient air" should be read to exclude indoor air. Defs' Br. at 6 (quoting *United States v. W.R. Grace & Co.*, 429 F.3d 1224, 1239 (9th Cir.2005)).

Additionally, statutes, if possible, must be interpreted so as to give every word effect. *United States v. Nordic Village, Inc.*, 503 U.S. 30, 36, 112 S.Ct. 1011, 117 L.Ed.2d 181 (1992). If "ambient air" refers to indoor air, the word "ambient" would be a superfluity, as it would not provide any meaningful modification of the word "air."

Applying the "normal rule of statutory construction that identical words used in different parts of the same act are intended to have the same meaning," *Internal Revenue v. Lundy*, 516 U.S. 235, 250, 116 S.Ct. 647, 133 L.Ed.2d 611 (1996), it follows that the meaning of "ambient air" at use in §§ 7407–7410 and the implementing regulations should be applied to § 7413(c)(5)(A).

The Government virtually concedes this point when it focuses its brief on whether or not the structures in question are open to the outdoors to such an extent that

---

**2.** § 7413(c)(5)(A) in relevant part provides that:

Any person who knowingly releases into the ambient air any hazardous air pollutant listed pursuant to section 7412 of this title or any extremely hazardous substance listed pursuant to section 11002(a)(2) of this title that is not listed in section 7412 of this title, and who knows at the time that he thereby places another person in imminent danger of death or serious bodily injury shall, upon conviction, be punished by a fine under Title 18, or by imprisonment for not more than 15 years, or both.

releases occurring within them constitute releases into the "ambient air." Instead of arguing the definition of "ambient air" for purposes of § 7413, the Government spends its time arguing the definition of the word "building," which is relevant only if the regulatory definition of "ambient air," i.e., air "exterior to buildings," applies. The Government urges a definition of "building" that excludes the structures at which some of the evidence in question was gathered. It contends that the open or unenclosed nature of these structures classifies releases occurring within them as releases external to buildings and thus, as releases into the "ambient air." While this discussion may be interesting at a philosophical level (Is a building with only three walls still a building? Or a building with no roof?), it is not the case that a structure must be air-tight to be considered a "building."

The Government's argument on the substantive issue of the definition of "ambient air" is limited to the unsupported assertion that the phrase, while admittedly having a well-established meaning as applied to §§ 7407–7410 of the Clean Air Act, is of "unsettled" meaning when applied to "releases of hazardous air pollutants." Govt's Resp. at p. 12. The Government provides no alternative definition, nor does it give an explanation for why it would be at all appropriate to apply this theoretical definition to § 7413 given the principles of statutory interpretation discussed above.

To the extent that case law on the matter exists, it supports the Defendants' position that "ambient air" refers to outdoor air. Defendants point to *United States v.*

*Ho,* Cr. No. H–00–183 (S.D. Tex. Nov 17, 2000), an unpublished opinion in which the district court determined that expert testimony about indoor releases was not admissible for the purposes of proving a CAA "knowing endangerment" charge because the testimony concerned releases not made into the "ambient air." They also cite *United States v. Pearson,* 274 F.3d 1225 (9th Cir.2001), in which the court, in a footnote, recognized certain EPA pronouncements identifying "ambient air" as exclusive of indoor air. An additional case which the Defendants do not cite is *Train v. NRDC,* 421 U.S. 60, 95 S.Ct. 1470, 43 L.Ed.2d 731 (1975), in which the Supreme Court, in the process of analyzing the responsibilities of the states under § 107 of the Clean Air Act, stated that "ambient air" is "the statute's term for the outdoor air used by the general public." *Id.* at 65, 95 S.Ct. 1470.

The regulations promulgated by EPA in 1971 explicitly define "ambient air" as the air exterior to buildings and accessible by the public. This regulatory definition is in use to the present day. Congress did not explicitly alter the longstanding regulatory definition when it added the criminal "knowing endangerment" provisions in 1990. Both canons of statutory construction and prior case law compel reading "ambient air" to exclude indoor air.[3]

**B. Admissibility of evidence of, or derived from, indoor releases under Federal Rule of Evidence 402.[4]**

■ Defendants claim that since "ambient air" isn't indoor air for the purposes of § 7413(c)(5)(A), indoor releases are not in violation of the provision, and evidence

---

**3.** Since the Court is not interpreting § 7413(c)(5)(A) to impose criminal liability for indoor, non-ambient releases, Defendants' Commerce Clause argument need not be addressed.

**4.** The admissibility of the evidence at issue in this order is subject to this Court's order of August 7, 2006 (Doc. 701). Any indoor evidence that does not distinguish the minerals making up the "Libby amphibole" is inadmissable.

of or derived from those releases is irrelevant. The Government contends that the Defendants are seeking an impermissibly narrow interpretation of Federal Rule of Evidence 401 in their call to exclude evidence under Rule 402. The Government also contends that the evidence the Defendants seek to exclude is relevant to the Count I conspiracy and certain of the obstruction charges in Counts V through VIII of the Superseding Indictment. The Government argues that the contested data relates to many aspects of the conspiracy to obstruct governmental functions which include the efforts of EPA to investigate the situation at Libby.

The Federal Rules of evidence are biased in favor of admissibility. The standard of relevance set out in Rule 401 is a liberal one. Rule 401 states that relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action" more or less probable than it would be in the absence of the evidence. The issue is whether indoor evidence is relevant to the application of § 7413(c)(5)(A) under this standard. Some of the evidence is, and some of the evidence is not.

Indoor sampling performed by EPA in the course of its CERCLA activities, and testimony based upon this sampling, is not relevant to whether Defendants committed a release in violation of the Clean Air Act, and is not admissible for the purpose of proving such a release.

■ To the extent that Defendants are making the claim that all evidence of or derived from non-ambient releases is irrelevant to the Clean Air Act counts, they are reaching too far. Although "non-historical" EPA sampling conducted after it began investigating at Libby is irrelevant, other kinds of "historical evidence" derived from indoor testing or sampling conducted by Grace may not be. Such historical evidence might go to Defendants' knowl-

edge of the dangerousness of the asbestos contaminated vermiculite, an issue germane to whether Defendants knowingly endangered anyone with the charged ambient releases. To hold otherwise would saddle the Government with a nearly impossible evidentiary burden, and would require an inappropriately narrow interpretation of relevance under Rule 401. It cannot be the case that testing and sampling, of which the Defendants were aware, that demonstrated the dangerousness of the materials in question is irrelevant to the knowing endangerment counts simply because it was conducted in non-ambient environments. That Defendants did not conduct tests to determine the risks posed by the types of releases for which they have been charged does not mean that they did not have some knowledge that those releases could be dangerous, an issue to which such indoor testing and sampling is directly relevant.

■ The Government is correct in its assertion that the indoor sampling conducted by EPA in conducting its CERCLA analysis is relevant to the conspiracy and certain of the obstruction counts of the Superseding Indictment. The Defendants are accused of conspiring to obstruct government investigations at Libby both by withholding pertinent information and by making inaccurate and misleading statements. To the extent that these statements or omissions concerned the nature of the contamination at various sites in Libby at the time of EPA's investigation, EPA sampling at those sites is relevant in assessing the allegations that the Defendants provided false or misleading information.

**C. Admissibility of evidence of, or derived from, indoor releases under Federal Rule of Evidence 403.**

■ Defendants maintain that the admission of indoor evidence would be cumu-

lative, prejudicial, and confusing. They argue that because indoor releases are legally irrelevant to the Clean Air Act counts of the Superseding Indictment, evidence derived from such releases is highly prejudicial as it may cause the jury to "view the 'ambient air' limitation" of the Act "as arbitrary and resist implementing it," and that the evidence "could inflame the jury's passions against the Defendants." Defs' Reply at p. 16. Defendants also claim that the disputed evidence would be highly confusing to the jury as it would require them to "separate the sample results and the risk calculations into two categories admissible for a complex array of differing purposes." *Id.*

Evidence derived from EPA testing and sample collection performed as part of its CERCLA analysis has the potential to be highly confusing and prejudicial. It has the potential to be confusing because it might cause the jury to incorrectly determine that the fundamental issue for its determination is whether the Defendants' acts had the effect of creating a public health emergency in Libby rather than whether the defendants are culpable under the Clean Air Act. It is prejudicial in that the indoor evidence may overstate the asbestos concentrations present in the releases for which the Defendants have been indicted.

As stated above, however, some of the evidence may be relevant to the conspiracy and certain of the obstruction counts, and is of probative value as to those parts of the indictment. If admitted the evidence will be accompanied by a limiting instruction telling the jury to consider the evidence only as it relates to the crimes charged in the conspiracy and obstruction counts, and that the jury may not rely upon any indoor release to support a guilty verdict on the Clean Air Act Counts.

### III. Order

Based on the foregoing, IT IS HEREBY ORDERED that the Defendant's motion to exclude evidence of or derived from indoor releases (Doc. No. 473) is GRANTED with respect to evidence of or derived from indoor releases offered for the purpose of proving an "ambient air" release in violation of 42 U.S.C. § 7413(c)(5)(A). It is DENIED with respect to such evidence offered for the purpose of establishing knowledge or proving the obstruction and conspiracy counts of the Superseding Indictment.