NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 19-30052 |
| Plaintiff-Appellee, | D.C. No. 3:17-cr-00369-SI-1 |
| v. | |
| JOHN M. WASSON, | MEMORANDUM[*] |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the District of Oregon
Michael H. Simon, District Judge, Presiding

Submitted June 4, 2020[**]
Portland, Oregon

Before:  BERZON and COLLINS, Circuit Judges, and CHOE-GROVES,[***] Judge.

John Wasson appeals his conviction, after a jury trial, on a single count of

willful depredation of government property, with damage exceeding $1,000, in

violation of 18 U.S.C. § 1361.  We affirm.

1.  Reviewing de novo, we agree with the district court's conclusion that the

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**] The panel unanimously concludes that this case is suitable for decision without oral argument.  *See* FED. R. APP. P. 34(a)(2)(C).

[***] The Honorable Jennifer Choe-Groves, Judge for the United States Court of International Trade, sitting by designation.

evidence was sufficient to permit a rational jury to find the elements of the charged offense beyond a reasonable doubt. *United States v. Sandoval-Gonzalez*, 642 F.3d 717, 727 (9th Cir. 2011).

a. Asserting that the jury instructions' very specific definition of willfulness improperly raised its burden of proof, the Government argues that we must disregard that instruction and instead evaluate the sufficiency of the evidence of willfulness under what it contends is the correct legal standard. *See Musacchio v. United States*, 136 S. Ct. 709, 715 (2016). We need not resolve this issue because, even assuming that the instruction was correct (as Wasson contends), the Government's evidence of willfulness was sufficient.

To show willfulness under the jury instructions, the Government had to prove beyond a reasonable doubt that (1) "Wasson knew that he had a duty to submit a notice of intent or a plan of operations to the United States Forest Service District Ranger for any operations that might cause significant disturbance of surface resources"; (2) "Wasson intentionally and voluntarily violated that duty"; and (3) Wasson "did not have a good[-]faith belief that he was complying with the law." The Government therefore had to show, *inter alia*, that Wasson did not have a good-faith belief that he was *not* required to submit a notice of intent in connection with his mining activities on land managed by the U.S. Forest Service ("USFS"). The trial record contains ample evidence to permit a rational jury to

2

find, beyond a reasonable doubt, that Wasson had not acted in good faith in failing to submit a notice of intent.

Wasson was well aware from his prior legal conflicts with the USFS that extended maintenance of a campsite could lead to degradation of the surface resources by killing the vegetation in the immediate area. Wasson had been convicted of unlawful occupancy of USFS land in 2013, and his conviction was affirmed by the district court and by this court. In 2014, a USFS special agent reiterated to Wasson that the USFS was concerned about the "level of his occupancy," which USFS thought "was causing significant damage to the surface resources." The special agent referenced Wasson's prior conviction of unlawful occupancy, and Wasson responded that the judges "got it wrong."

Thereafter, in 2017, the special agent noticed that digging, as well as removal of grass and trees, had been used to create a new road to Wasson's then-campsite. The special agent also testified that Wasson had "cleared a bunch of vegetation" to create this new campsite, including cutting trees to fit a camper and laying a wood foundation for the tent. A search of the campsite revealed two five-gallon containers that were leaking vegetable oil, as well as a document about making "biodiesel" fuel. Wasson also had at the campsite a USFS flyer stating that a "14-day stay limit" was enforced to protect resources.

Moreover, a USFS employee named Travis Whitman testified that, after

3

viewing Wasson's campsite and being told by Wasson that he intended to stay "through the season and into the fall," Whitman personally told Wasson in July 2017 that he needed to submit a notice of intent. Wasson's response was *not* that his activities did not entail the level of surface-resource disturbance required to trigger the need to submit a notice of intent. Rather, Wasson's response was that—despite his prior conviction—the "Forest Service regulations didn't cover occupancy" and that the National Environmental Policy Act ("NEPA") process that might result "was too long and time-consuming." Whitman testified that Wasson's reference to NEPA was notable because the USFS does not "initiate NEPA on a notice[] of intent unless that activity may have some sort of significant impact to surface resources."

In light of this evidence—all of which was presented in the Government's case-in-chief—a reasonable jury could find that Wasson knew that his activities involved a significant disturbance of surface resources; that he knew that he therefore had to submit a notice of intent; and that he acted in bad faith in failing to do so. The evidence was therefore sufficient to establish willful depredation of government property.

b. The evidence was likewise sufficient to prove that Wasson's depredation caused more than $1,000 in damage to government property. Contrary to what Wasson contends, our decision in *United States v. Seaman*, 18 F.3d 649 (9th Cir.

4

1994), does not hold that, in a damage-to-government-land case, the sole measure of damage under § 1361 is the difference in the value of that land before and after the damage. Although we noted that no such difference-in-value evidence had been introduced in *Seaman*, we made that observation only after also noting that the Government's photographic evidence was insufficient to provide "any basis for evaluating damage in monetary terms" and that the record as a whole contained "no evidence whatsoever" of the requisite amount of damage. *Id*. at 651. Here, by contrast, the Government did present evidence of valuation in the form of reasonable remediation costs to repair the damage Wasson had caused. These included estimated future costs to remediate the road as well as already-incurred costs to remove the vegetable oil and contaminated soil. Either of these measures is sufficient to permit a reasonable jury to find more than $1,000 in damage beyond a reasonable doubt.

2. The district court did not abuse its discretion by excluding photographs proffered by Wasson concerning neighboring campsites. *See United States v. Alvirez*, 831 F.3d 1115, 1120 (9th Cir. 2016). Even assuming that these 2018 photographs depicted the way these other campsites "looked to Mr. Wasson in 2017," the district court properly excluded them on the ground that there was an insufficient foundation to tie them to Wasson's willfulness or good faith. As the Government explained, and the district court agreed, there was no evidence as to

5

whether a notice of intent or plan of operations existed for those sites or whether the individuals involved had been warned as Wasson had. To the extent that the photographs would have impeached the testimony that a USFS ranger had offered concerning other sites, the district court properly noted that Wasson had failed to use the photographs during that cross examination and that admission of the photographs after-the-fact was inconsistent with Federal Rule of Evidence 608(b). *See Ortiz v. Yates*, 704 F.3d 1026, 1038 (9th Cir. 2012) ("As a general matter, a witness may not be contradicted by extrinsic evidence on a collateral matter.").

**AFFIRMED.**